# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Kimberlee Rae Carbone,
          Plaintiff,

v.

The City of New Castle; The County of
Lawrence; Chief Robert Salem; Officer
David Maiella; Officer Terry Dolquist;
Officer Sheila Panella; Correction Officer
April Brightsue; Correction Officer Niesha
Savage; Commander Mark Keyser;
Attorney Joshua Lamancusa; Jameson
Health Systems; Bernard Geiser, M.D.; Kim
Fee,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

2:15-cv-1175

## MEMORANDUM OPINION

Plaintiff, Kimberlee Rae Carbone, has filed suit under 42 U.S.C. § 1983 against numerous individuals and entities who were allegedly involved in her arrest and subsequent strip and cavity searches following a traffic stop in November 2013; to wit: the City of New Castle, the County of Lawrence, New Castle Chief of Police Robert Salem, New Castle Police Officer Terry Dolquist, New Castle Police Officer Sheila Panella, Lawrence County Corrections Officer April Brightsue, Lawrence County Corrections Officer Niesha Savage, Lawrence County Corrections Commander Mark Keyser, Lawrence County District Attorney Joshua Lamancusa, Jameson Health System, Bernard Geiser, M.D., and Kim Fee.

The following motions are pending before the Court:

(1) the LAWRENCE COUNTY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM (ECF No. 31);

(2) DEFENDANTS THE CITY OF NEW CASTLE, CHIEF ROBERT SALEM, OFFICER DAVID MAIELLA, OFFICER TERRY DOLQUIST, AND OFICER SHEILA

PANELLA'S PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) (ECF No. 34);

(3) JAMESON HEALTH SYSTEM'S AND KIM FEE'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) (ECF No. 38); and

(4) the RULE 12(b)(6) MOTION TO DISMISS filed by Dr. Geiser (ECF No. 49).

The motions have been extensively briefed (ECF Nos. 32, 35, 38, 41, 42, 42, 50, 54, 52, 53) and accordingly are ripe for disposition.

## I.    Background

### A.    Factual Allegations

On November 3, 2013, Officer Maiella saw a man, later identified as Jason Monette, briefly enter an apartment and, upon exiting, get into the front passenger seat of Plaintiff's car, which was parked outside the apartment complex. Am. Compl. ¶¶ 23-25. As Plaintiff pulled away, Officer Maiella stopped the vehicle, allegedly because she did not apply her turn signal at least 100 feet before the intersection. *Id.* ¶ 26.

Fifteen minutes later, Chief Salem and District Attorney Lamancusa arrived on the scene and asked Plaintiff about the identity of her passenger and whether she possessed any drugs. *Id.* ¶ 29. Plaintiff identified her passenger and denied possessing any drugs, and then she invoked her right to remain silent. *Id.* ¶ 30. Lamancusa and Salem, however, did not believe the responses Plaintiff had given them. *Id.*

After informing Plaintiff that he smelled burnt marijuana coming from the car, Maiella arrested her for suspicion of DUI. *Id.* ¶ 31. A field sobriety test was not performed. *Id.* ¶ 32. Maiella proceeded to detain Plaintiff and search her incident to arrest, but he did not find any drugs on her. *Id.* ¶ 33. Maiella later obtained a warrant to search Plaintiff's car, but no drugs were found there, either. *Id.* ¶ 34.

Nonetheless, "Maiella and Dolquist transported the Plaintiff to [Lawrence County Correctional Center] at the direction of Defendants Lamancusa and Salem." *Id.* ¶ 36. Once there, "Maiella, Dolquist, and Keyser instructed Defendants Brightsue and Savage to strip search the Plaintiff." *Id.* ¶ 38. "Brightsue, Savage, and Keyser forced the Plaintiff to remove her clothing," and she was then "directed to bend over, spread her buttocks, and cough." *Id.* ¶¶ 39, 41. During a visual inspection of Plaintiff's vagina and rectum, Brightsue and Savage (incorrectly) believed that they saw a plastic bag protruding from Plaintiff's vagina, so Plaintiff was directed "to repeatedly prod her personal areas by inserting her fingers into her vagina to remove" the item, which was determined not to exist. *Id.* ¶¶ 43-44. Then she "was forced to once again bend over, spread her buttock, and cough while Defendants Brightsue and Savage again visually inspected her vaginal and rectal areas." *Id.* ¶ 45. All the while, Plaintiff was "crying hysterically and insisting that" she was not hiding anything in her body. *Id.* ¶ 46. After these visual inspections failed to uncover any drugs, Maiella "contacted Defendants Lamancusa and Salem to determine how to proceed." *Id.* ¶ 47. He was instructed to take Plaintiff to Jameson Hospital for an internal examination of her body cavities. *Id.* ¶ 48. At no point did Defendants seek or obtain a search warrant. *Id.* ¶ 49.

Plaintiff arrived at Jameson Hospital at approximately 7:24 p.m. *Id.* ¶ 50. Once again, she told Defendants that she was not hiding anything; she also told them that she "did not consent to medical treatment or an offensive touching." *Id.* ¶ 50. Over Plaintiff's objections, Lamancusa, Salem, Maiella and Dolquist agreed with Dr. Geiser and Nurse Fee that Plaintiff needed treatment "for a possible overdose, rectal packing and/or oral intake of a controlled substance." *Id.* ¶ 51. However, "Plaintiff refused treatment, refused to sign a consent for treatment form and once again adamantly denied concealing any foreign substance." *Id.* ¶ 52. She was nevertheless

examined. Although she did not display any objective symptoms that "would confirm a possible overdose, rectal packing or oral intake of drugs," *id.* ¶ 53, the procedure went ahead anyway. Plaintiff was restrained to a bed by her wrists and ankles, and Dr. Geiser performed an internal inspection of her vagina and rectum. *Id.* ¶ 54. Following the examination, Dr. Geiser told Salem and Lamancusa that he did not detect anything. *Id.* ¶ 58. At that point, Plaintiff requested to use the restroom, and she was told to squat over a chair and urinate into a bedpan. *Id.* ¶¶ 59, 60. While doing so, her genital area was partially exposed to Defendants after the privacy cover that was being used to shield her was mishandled. *Id.* ¶ 62. A sample of Plaintiff's urine was subsequently taken and the bedpan was examined for foreign substances, but none were found. *Id.* ¶ 63.

Since Defendants believed that "Plaintiff might have something located deeper in her vagina and rectum," *id.* ¶ 64, a CT scan was performed, the results of which were negative, *id.* ¶¶ 65, 66. During this time, "Lamancusa berated the Plaintiff by informing her that if she helped him by provid[ing] information regarding drug related activity the unreasonable and unconstitutional intrusion would end." *Id.* ¶ 67. In addition, the Defendants "harassed, mocked, and berated the Plaintiff by making derogatory remarks about her compromised position" and Lamancusa further mocked her "by asking her if she knew what prison felt like." *Id.* ¶ 68.

After the CT scan, Dr. Geiser performed a second internal examination of Plaintiff's vagina and rectum. *Id.* ¶ 71. Once he was finished, he instructed Fee and another nurse to assist him with another internal inspection of Plaintiff's vagina and rectum. *Id.* ¶ 72. Again, nothing was found. *Id.* ¶ 74. Next, the medical staff swabbed Plaintiff's vagina for testing. *Id.* ¶ 75. Maiella then returned to the room, unsecured Plaintiff from the bed, and advised her that she could leave. *Id.* ¶ 76. Hospital records confirm that she was discharged at 9:15 p.m. *Id.* ¶ 77.

The next day, Plaintiff returned to the hospital and was diagnosed with a sprained wrist. *Id.* ¶ 78. Two days later, she followed-up with her physician for pain and discomfort in her vaginal area. *Id.* ¶ 79. Later that same week, Plaintiff began seeing a psychologist, and she has since been treated for nightmares, mood disorder, difficulty sleeping, decreased intimacy, depression, and anxiety. *Id.* ¶ 80.

### B.    Procedural History

Plaintiff filed this action on September 8, 2015. Each of the Defendants responded by filing partial motions to dismiss. Thereafter, Plaintiff filed an Amended Complaint, in which she asserts the following claims: "Fourth Amendment – Unreasonable Search and Seizure" against Lamancusa and Salem, Maiella, Dolquist, and Panella (the "Police Defendants") (Count I); "Fourth Amendment – Unreasonable Search and Seizure" against Brightsue, Savage, and Keyser (the "Corrections Defendants") (Count II); "Fourth Amendment – Unreasonable Search and Seizure" against the City of New Castle and Lawrence County (Count III); "Conspiracy to Violate Plaintiff's Fourth and Fourteenth Amendment Rights" against Jameson, Dr. Geiser, Fee, Lamancusa, and the Police Defendants (Count IV); "First Amendment Retaliation" against Lamancusa and the Police Defendants (Count V); "Fourteenth Amendment – Liberty Interest in Reputation" against Lamancusa, the Police Defendants, and the Corrections Defendants (Count VI); and "Fourteenth Amendment Substantive and Procedural Due Process" against the City of New Castle, Lawrence County, Lamancusa, the Police Defendants, and the Corrections Defendants (Count VII).

In the remaining Counts, Plaintiff alleges several supplemental state-law claims: negligence against Jameson, Dr. Geiser, and Fee (Count VIII); respondeat superior against Jameson (Count IX); battery against Jameson, Dr. Geiser, and Fee (Count X); false

imprisonment against Lamancusa, the Police Defendants, and the Corrections Defendants (Count XI); civil conspiracy against Lamancusa, Dr. Geiser, Fee, the Police Defendants, and the Corrections Defendants (Count XII); negligent supervision against Jameson (Count XIII); and intentional infliction of emotional distress ("IIED") against Lamancusa, Dr. Geiser, Fee, the Police Defendants, and the Corrections Defendants (Count XIV).

## II.    **Legal Standard**

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard "does not impose a probability requirement." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). However, a pleading must show "more than a sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678.

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal*, the court must follow a three-step approach. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010). First, "the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* at 130 (quoting *Iqbal*, 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Third, the court must assume that all well-pleaded facts are true and construe them in the light most favorably to the plaintiff and "'then determine whether they plausibly give rise to an entitlement for relief.'" *Id.* (quoting

*Iqbal*, 556 U.S. at 679); *see also Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014) (citation omitted).

## III.    Discussion

Defendants are seeking to drastically scale down Plaintiff's Amended Complaint, such that she would, in essence, be left with her First and Fourth Amendment claims and a small number of related state-law claims. Specifically, Lamancusa seeks to dismiss the civil rights conspiracy claim (Count IV), the "stigma-plus" claim (Count VI), the substantive and procedural due process claims (Count VII), and each of the state-law claims (Counts XI, XII, and XIV). The Corrections Defendants also seek to dismiss Counts VI and VII, as do the City of New Castle and the Police Officer Defendants. Jameson and Fee join Lamancusa in moving to dismiss Count IV, and they also seek to dismiss the negligence claim (Count VIII), the respondeat superior claim (Count IX), the negligent supervision claim (Count XIII), and the IIED claim (Count XIV). Dr. Geiser also seeks to dismiss those claims, in addition to Count IV, the battery claim (Count X), the false imprisonment claim (Count XI), and the state-law civil conspiracy claim (Count XII).

### A.    Count IV – Conspiracy to Violate Plaintiff's Fourth and Fourteenth Amendment Rights

Jameson, Fee, and Lamancusa argue that Plaintiff's § 1983 conspiracy claim should be dismissed because Plaintiff's allegations are too broad and conclusory to show that Defendants entered into an agreement to violate Plaintiff's constitutional rights.[1] Dr. Geiser also seeks to dismiss this claim but on a different basis. He contends that, as a private actor, he cannot be held

---

1.      Plaintiff has styled this as a claim for conspiracy to violate her Fourth and Fourteenth Amendment rights. The Court assumes that Plaintiff included the reference to the Fourteenth Amendment solely because it is the means by which the Fourth Amendment's requirements are incorporated against the states. If, however, Plaintiff intended to base her conspiracy claim on violations of substantive and/or procedural due process, the claim would of necessity fail for the reasons explained *infra*. In short, Plaintiff cannot seek refuge in the Fourteenth Amendment when the Fourth Amendment clearly delineates the standards applicable to her claims.

liable for the alleged constitutional violation.

Dr. Geiser's argument can be quickly dispatched since "a private party can be liable under § 1983 if he or she willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right[.]" *Max v. Republican Comm. of Lancaster Cnty.*, 587 F.3d 198, 203 (3d Cir. 2009) (citing *Abbott v. Latshaw*, 164 F.3d 141, 147-48 (3d Cir. 1998)). Thus, the Court will focus on whether Plaintiff has adequately pled a claim for conspiracy against the state-actor Defendants and the requisite level of involvement on the part of Dr. Geiser and Fee.

"'A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act[.]" *Holt Cargo Sys., Inc. v. Del. River Port Auth.*, 20 F. Supp. 2d 803, 843 (E.D. Pa. 1998) (quoting *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995)). "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred" or, in the post-*Twombly/Iqbal* parlance, "'plausible grounds to infer an agreement.'" *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556). The facts pled, in other words, must raise "a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Twombly*, 550 U.S. at 557. Moreover, "[o]nly allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose, will be deemed sufficient." *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989).

Plaintiff's allegations do not meet this standard. To begin with, the allegations in paragraphs 123 through 130 are nothing more than legal conclusions and are thus not entitled to a presumption of truth. *Great W. Mining*, 615 F.3d at 178 (quoting *Iqbal*, 129 S. Ct. at 1950). So,

too, is the portion of paragraph 56, which alleged that Defendants "collectively agreed to act in concert . . . ." Am. Compl. ¶ 56.

When these allegations are cast aside, as they must be when deciding whether Plaintiff states a claim, *see Great W. Mining*, 615 F.3d at 178, the remaining allegations, even accepted as true, do not allow the Court to infer that Defendants entered into an agreement to violate Plaintiff's rights. To be sure, Plaintiff has alleged "concerted action" on the part of Defendants – i.e., they all had some involvement in the alleged deprivation of her constitutional right(s), though some allegedly had more involvement than others. However, there is nothing in the Amended Complaint to suggest that Defendants acted in accordance with a prior agreement to engage in the alleged course of conduct. Although there was communication among the Defendants while the searches occurred – e.g., when Maiella contacted Lamancusa and Salem after the searches at the jail – "the situation as alleged appears to be officers following the ranking officer's lead rather than an agreement to deprive [Plaintiff] of [her] rights." *Smith v. Wolf*, No. 13 CV 63, 2013 WL 3168753, at *6 (N.D. Ill. June 20, 2013); *see also Gleason v. E. Norriton Twp.*, No. 11-CV-6273, 2012 WL 3024011, at *5 (E.D. Pa. July 24, 2012) ("The mere fact that the Defendant officers called Defendant ADA Potere for legal advice and then relied on the advice given does not suggest a conspiratorial agreement to deprive Plaintiff of his constitutional rights. Rather this is the sort of 'allegation of parallel conduct' that *Twombly* held was insufficient to plead a conspiracy.").

Accordingly, Count IV of the Amended Complaint will be dismissed as to Jameson, Fee, Lamancusa, and Dr. Geiser. Although the Police Defendants have not separately moved to dismiss this claim, it will also be dismissed as to them. Plaintiff was clearly "on notice of the failure to state a claim defense and the legal arguments in support thereof," and she had a fully

opportunity to respond. *Penn. State Troopers Ass'n v. Penn.*, No. 1:06-CV-1079, 2007 WL 853958, at *9 (M.D. Pa. Mar. 20, 2007). Thus, *sua sponte* dismissal is proper. *See id.*

## B.    Count VI – Fourteenth Amendment Liberty Interest in Reputation

Defendants argue that Plaintiff does not have an interest in her reputation protected by the Fourteenth Amendment due process clause, so her attempt to plead a due process claim based on the harm to her reputation must fail. "'[R]eputation alone is not an interest protected by the Due Process Clause.'" *Dee v. Borough of Dunmore*, 549 F.3d 225, 233 (3d Cir. 2008) (quoting *Clark v. Twp. of Falls*, 890 F.2d 611, 619 (3d Cir. 1993)). "Rather, to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to [her] reputation plus deprivation of some additional right or interest." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006) (emphasis in original). This is known as the "stigma-plus" test. *Id.*

"To satisfy the 'stigma' prong of the test," the plaintiff must allege that "the purportedly stigmatizing statement(s) (1) were made publicly . . . and (2) were false." *Id.* (citations omitted).

With regard to the "plus" prong, "what qualifies as a sufficiently 'tangible interest[],' . . . has been the source of 'some confusion.'" *Good v. City of Sunbury*, 352 F. App'x 688, 691 (3d Cir. 2009) (quoting *Paul*, 424 U.S. at 701; *Baraka v. McGreevey*, 481 F.3d 187, 208 (3d Cir. 2007)). Most of the Third Circuit's cases addressing this question have arisen in the public-employment context.[2] *See, e.g.*, *Hill*, 455 F.3d at 237. Outside of that arena, though, the Court of Appeals has never determined what other types of deprivations may be sufficient. *See Good*, 352 F. App'x at 691.

Relying on *Gobel v. Maricopa County*, 867 F.2d 1201, 1205 (9th Cir. 1989) – which

---

2.    Contrary to what Defendants seem to suggest, though, the Court of Appeals has never limited the "stigma-plus" theory to cases in which the "plus" is the termination of public employment. *See, e.g.*, *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 793 (3d Cir. 2000) (holding that plaintiff stated a "stigma-plus" claim where she alleged an injury to her reputation in connection with the deprivation of her First Amendment right to free speech).

relied on *Marrero v. City of Hialeah*, 625 F.2d 499, 516-19 (5th Cir. 1980) – Plaintiff argues that defamatory statements made "in connection" with an unlawful arrest are actionable under § 1983, since the unlawful arrest provides the necessary "plus" factor. Assuming that there are certain cases when that may be true,[3] *Marrero* and *Gobel* are distinguishable from this case and thus do not convince the Court that Plaintiff has validly stated a "stigma-plus" claim.

In *Marrero*, the police, accompanied by a local prosecutor, raided the plaintiffs' jewelry store and seized all of the jewelry, after claiming that it was stolen. 625 F.2d at 502. Then they announced to the media that "over $75,000 in stolen property had been recovered in the raid and that [plaintiffs] had been arrested." *Id.* Because the allegedly defamatory statements "occurred in connection with the alleged violation of [the plaintiffs'] fourth amendment rights," the Fifth Circuit Court of Appeals concluded that "the injury to [the plaintiffs'] personal and business reputations constitutes the deprivation of liberty interests." *Id.* at 519.

In *Gobel*, the plaintiffs were arrested for passing bad checks and "perp walked" in front of members of the media, to whom the prosecutors made allegedly false accusations. 867 F.2d at 1202. In addition to claiming that their arrests were unlawful, the plaintiffs also sought recovery for damage to their reputations caused by the prosecutors' statements to the media. *Id.* at 1205. Adopting the reasoning from *Marrero*, the Ninth Circuit held that the plaintiffs' "stigma-plus" claim was cognizable because "the false statements were made in connection with their illegal arrest." *Id.*

In this case, by contrast, the allegedly defamatory statement – i.e., "that Plaintiff had

_____

3.     Other courts have taken a view that seems to conflict with that of the Fifth and Ninth Circuits. *See Rehberg v. Paulk*, 611 F.3d 828, 853 (11th Cir. 2010) *aff'd*, 132 S. Ct. 1497 (2012) (explaining that the plaintiff could not "use the prosecution itself (the indictment and arrest) as the basis for constitutional injury supporting a § 1983 defamation claim"); *Buckley v. Fitzsimmons*, 20 F.3d 789, 797 (7th Cir. 1994) (rejecting the contention that the plaintiff's arrest was a sufficient "plus" under the "stigma-plus" test, though chiefly because the defendant-prosecutor was immune from liability for the arrest and prosecution of the plaintiff; *see also Evans v. Chalmers*, 703 F.3d 636, 655 (4th Cir. 2012) (declining to decide "whether a Fourth Amendment violation constitutes a cognizable 'plus' under *Paul*").

controlled substances hidden in her body cavity and/or otherwise had committed a crime," Am. Compl. ¶ 142 – was not made to the media. Nor was it otherwise published to members of the community. To the contrary, the only persons who heard the accusation were the police officers, corrections officers, and medical staff involved in Plaintiff's arrest and the subsequent searches. However, this sort of intra-governmental and inter-governmental disclosure is not sufficient. *Cf. White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1063 (2d Cir. 1993) ("Given that the primary function of a police force is law enforcement, we doubt that police officers' informing other police officers, even those without authority to make employment decisions, that a given individual has been accused of being dishonest or is believed to have ties to organized crime can constitute a sufficient publication to warrant a ruling that the individual's liberty interest has been impermissibly infringed."); *Tarhuni v. Holder*, 8 F. Supp. 3d 1253, 1275 (D. Or. 2014) (finding that the plaintiff failed to state a "stigma-plus" claim because "the instruction to the airlines not to permit [him] to board and to refer [him] to government officials did not constitute dissemination of the stigmatizing information in such a way as to reach the community at large"). That the allegedly defamatory statement was made to Plaintiff in the course of the arrest and subsequent searches is likewise not sufficient because "[t]o constitute a publication . . . the defamatory matter [must] be communicated to someone other than the person defamed." *Restatement (Second) of Torts* § 577 (1977).

The lack of publication to anyone other than those involved in the arrest and searches points to a more fundamental, conceptual problem with Plaintiff's purported "stigma-plus" claim. Since there was no true publication, to the extent that Plaintiff could prove that her reputation has suffered, it would seem that any such injury would actually be attributable to the allegedly unlawful arrest and searches, not the allegedly false accusation that precipitated those

events.[4] However, this type of injury is not actionable on its own under § 1983. *See Marrero*, 625 F.2d at 513-14 ("To the extent [the plaintiffs'] reputations were injured as a result of [the allegedly unlawful search and seizure], defamation is not the basis of the § 1983 action."). "Rather, the injury to reputation is simply an element of the damages suffered as a result of the [alleged] violation of [Plaintiff's] fourth amendment rights." *Id.* at 514; *see also Hector v. Watt*, 235 F.3d 154, 157 (3d Cir. 2000) (quoting *Townes v. City of N.Y.*, 176 F.3d 138, 148 (2d Cir. 1999)) ("'Victims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy – including (where appropriate) damages for physical injury, property damage, injury to reputation, etc.'").

Additionally, the Court wonders what "process" would be "due" to Plaintiff in the event that she could state a "stigma-plus" claim in this context, beyond that which is already required by the Fourth Amendment. "When such a deprivation occurs" in the public-employment context, "the employee is entitled to a name-clearing hearing." *Hill*, 455 F.3d at 236. But it seems unlikely that the same is required when a plaintiff claims that she was defamed in connection with an unlawful arrest. Plaintiff offers no argument on this point, and neither *Marrero* nor *Gobel* offers a clear answer, either. The Court also questions whether Plaintiff would be permitted to recover for harm to her reputation as an element of damages on her unreasonable search and seizure claim *and* for the damage to her reputation arising "in connection with" her false arrest, which smacks of allowing double recovery. *See Cooper v. Sedgwick Cnty.*, 206 F. Supp. 2d 1126, 1142 (D. Kan. 2002) (raising the same concerns). That assumes, of course, that "a plaintiff who prevails on a 'stigma-plus' claim" is even "entitled to remedies other than a

---

4.    It bears mentioning that nowhere in Plaintiff's Amended Complaint does she actually allege that either the allegedly false statement or the arrest and subsequent searches caused an injury to her reputation. Setting aside the conceptual difficulties with her claim, her failure to plead reputational harm alone would be fatal. *See Watson v. Sec'y Penn. Dep't of Corr.*, 436 F. App'x 131, 134-35 (3d Cir. 2011) (explaining that the "'stigma-plus' test" "requires a demonstration of injury to reputation").

name-clearing hearing" – a question our Court of Appeals has not decided. *Hill*, 455 F.3d at 236. These looming questions confirm to the Court that Plaintiff's claim should be analyzed under the Fourth Amendment and the Fourth Amendment alone, as it clearly delineates the standards that apply in cases of this type. For these reasons, Count VI of the Amended Complaint will be dismissed.

### C.    Count VII – Fourteenth Amendment Substantive and Procedural Due Process

Defendants contend that Plaintiff's substantive due process claim should be dismissed under the "more-specific provision rule." This argument is well taken. As the United States Supreme Court has explained, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing the claims.'" *Albright v. Oliver*, 510 U.S. 266, 273, (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). In Count VII, Plaintiff alleges that "[t]he actions of Defendants . . . violated the Plaintiff's Fourteenth Amendment rights to be secure in her person from unreasonable search and seizure." Compl. ¶ 150. The right to be free from "unreasonable search and seizure," however, is expressly protected by the Fourth Amendment. *See Albright*, 510 U.S. at 273 ("The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it."). Thus, the Fourth Amendment, and not the concept of substantive due process embodied in the Fourteenth Amendment, is applicable and must control Plaintiff's claims.

Defendants also seek to dismiss the procedural due process claim on similar grounds. The Court agrees with this argument, too. As already explained when discussing Plaintiff's purported "stigma-plus" claim, which is just "a species within the phylum of procedural due process

claims," *Segal v. City of N.Y.*, 459 F.3d 207, 213 (2d Cir. 2006), Plaintiff has not alleged that she was entitled to any "process" beyond that which is called for by the Fourth Amendment. *See Gerstein v. Pugh*, 420 U.S. 103, 125 n.27 (1975) ("The Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of person or property in criminal cases."). Thus, Plaintiff's procedural due process claim is "subsumed by [her] Fourth Amendment claim" and will be dismissed. *Morgan v. Borough of Fanwood*, No. CIV.A. 11-7513 ES, 2015 WL 4112135, at *5 n.4 (D.N.J. July 7, 2015).

### D.    Counts XI, XII, and XIV – State Law Claims against Lamancusa

District Attorney Lamancusa moves to dismiss the state-law tort claims asserted against him – false imprisonment (Count XI), civil conspiracy (Count XII), and IIED (Count XIV) – on the grounds of "high public official" immunity. Under Pennsylvania law, "high public officials" are absolutely immune from tort liability. *Gregg v. Pettit*, No. CIV A 07-1544, 2009 WL 57118, at *7 (W.D. Pa. Jan. 8, 2009) (citing *Durham v. McElynn*, 772 A.2d 68, 70 (Pa. 2001)). While the doctrine originated in the context of defamation suits, it now applies in other types of cases, as well. *The Choice Is Yours, Inc. v. The Choice Is Yours*, No. 2:14-CV-01804, 2015 WL 5584302, at *12 n.4 (E.D. Pa. Sept. 22, 2015) (citations omitted). The scope of immunity has been described as "'unlimited'": it protects "high public officials" from tort liability, even if "motivated by malice," as long as "'the actions [were] taken in the course of the official's duties or powers and within the scope of his authority.'" *Durham*, 772 A.2d at 70 (quoting *Matson v. Margiotti*, 88 A.2d 892, 895 (Pa. 1952)).

It is not disputed that a district attorney is considered a "high public official" under Pennsylvania law. *Id.* The question, then, is whether Lamancusa's actions fell within the scope of

his official duties. Plaintiff argues that they did not, likening Lamancusa's conduct "to that of a law enforcement agent as he was present at the scene, directed the investigation, and interrogated the Plaintiff prior to any official charges being filed." Pl.'s Br. in Resp. to Lawrence Cnty. Defs.' Mot. 9. Plaintiff also points out that Lamancusa was acting as a member of the Lawrence County Drug Task force at the time, which she suggests should defeat his claim to immunity.

If Lamancusa were arguing that he is immune from liability under § 1983, Plaintiff's argument might have some semblance of merit because the scope of prosecutorial immunity under § 1983 is determined by "'the nature of the function performed, not the identity of the actor who performed it.'" *Odd v. Malone*, 538 F.3d 202, 207 (3d Cir. 2008) (quoting *Light v. Haws*, 472 F.3d 74, 78 (3d Cir. 2007)). In other words, a prosecutor enjoys immunity in § 1983 actions for conduct "'intimately associated with the judicial phases of litigation,'" but not for "administrative or investigatory actions unrelated to initiating and conducting judicial proceedings." *Id.* (quoting *Giuffre v. Bissell*, 31 F.3d 1241, 1251 (3d Cir. 1994)); *see, e.g.*, *Church of Universal Love & Music v. Fayette Cnty.*, 892 F. Supp. 2d 736, 752 (W.D. Pa. 2012) (concluding that a prosecutor was not entitled to absolute immunity in a § 1983 action because he acted "in his capacity as the Lead Coordinator of the Fayette County Drug Task Force").

Under Pennsylvania law, however, the scope of protection is broader. *See Teeple v. Carabba*, No. CIV.A. 07-2976, 2009 WL 5033964, at *20 (E.D. Pa. Dec. 22, 2009), *aff'd*, 398 F. App'x 814 (3d Cir. 2010) (citing *Domenech v. City of Philadelphia*, No. 06 CV 1325, 2007 WL 172375, at *4 (E.D. Pa. Jan. 18, 2007)). Specifically, unlike its federal analog, "Pennsylvania high public official immunity does not distinguish among prosecutorial, advocative, investigative or administrative conduct[.]" *Brown v. Chardo*, No. 1:11-CV-0638, 2012 WL 983553, at *10 (M.D. Pa. Mar. 22, 2012). Rather, the doctrine encompasses "*all conduct* . . . within the course of

the official's duties." *Id.* (citing *Matson*, 88 A.2d at 895) (emphasis added). A district attorney's official duties are not limited to the prosecution of crime; investigating criminal activity has also historically been part of the job. *See Com. ex rel. Specter v. Freed*, 228 A.2d 382, 383 (Pa. 1967). Because all of the conduct alleged in this case occurred while District Attorney Lamancusa was performing the investigatory function of his office, he is absolutely immune from tort liability, and the claims against him in Counts XI, XII, and XIV will be dismissed.

### E.   Count XI – False Imprisonment

Dr. Geiser argues that Plaintiff has failed to state a claim for false imprisonment because he "was acting in accordance with what he perceived as a valid arrest" and so "could not have intended to unlawfully detain [P]laintiff." Geiser's Br. 6.

"The elements of false imprisonment are (1) the detention of another person, and (2) the unlawfulness of such detention." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). A detention is unlawful if it is not based upon probable cause. *Id.* A defendant can be held liable for false imprisonment only if: "(1) the defendant acted with the intent to confine the plaintiff within fixed boundaries; (2) the defendant's act directly or indirectly confined the plaintiff; and (3) plaintiff was aware of the confinement or harmed by it." *Pope v. Rostraver Shop 'n Save*, 389 F. App'x 151, 152 (3d Cir. 2010) (citations omitted).

Plaintiff alleges that "Geiser, Fee, Lamancusa, Salem, Dolquist, Maiella, and Panella intentionally confined [her] at [Jameson Hospital] without her consent." Am. Compl. ¶ 177. She further alleges that Defendants "had no lawful authority to detain the Plaintiff as she had repeatedly complained of her illegal detention to all [D]efendants present to include Defendant's [sic] Geiser and Fee and refused to sign the consent for treatment form." *Id.* ¶ 178. Elsewhere in the Amended Complaint, Plaintiff alleges that her "hands and feet were secured to the bed . . .

and these restraints were further maintained and authorized outside the presence of the law enforcement defendant's [sic] by the medical staff when the Plaintiff was being examined." *Id.* ¶ 54. Furthermore, she claims that she was not permitted to leave the hospital until the searches were complete, some five hours after she was apprehended. *Id.* ¶¶ 76, 179. Finally, as a direct result of her confinement, Plaintiff alleges that she suffered wrist pain and psychological harm. *Id.* ¶¶ 78-80. These allegations are sufficient to state a claim for false imprisonment. *See Brownstein*, 649 F. Supp. 2d at 376 (finding that the plaintiff adequately alleged false imprisonment against hospital defendants who "confined him to a gurney by strapping his arms, legs and chest to it . . . with the intention of confining him to that space so they could draw blood from him").

The Court is sympathetic to Dr. Geiser's argument regarding his lack of intent. He was enlisted into action by the authorities, whom he likely (if perhaps incorrectly) believed were acting lawfully. But this question cannot be resolved at the Rule 12(b)(6) stage. *See id.* (concluding that the plaintiff alleged the "intent necessary to survive a motion to dismiss" where he claimed "that defendants purposely tied him to the gurney to keep him from resisting efforts to draw blood"). Indeed, even if the arrest were facially valid, as Dr. Geiser argues, "[c]ircumstances attending or following a detention lawful in its inception may render it unlawful so as to impose liability for false imprisonment." 35 *C.J.S. False Imprisonment* § 35 (citing *Landry v. A-Able Bonding, Inc.*, 75 F.3d 200 (5th Cir. 1996); *Hyatt v. U.S.*, 968 F. Supp. 96 (E.D. N.Y. 1997)). Thus, Dr. Geiser's motion to dismiss Plaintiff's false imprisonment claim must be denied. The question whether he acted with sufficient justification or has a valid defense to the claim must wait to be decided at a later stage of the lawsuit.

### F.    Count XII – Civil Conspiracy

Dr. Geiser also moves to dismiss the state-law conspiracy claim. The Court has already dismissed Plaintiff's claim for conspiracy under § 1983, and "[t]he standard for civil conspiracy under Pennsylvania law" sets "a higher bar than under Section 1983" because in addition to proving the existence of an agreement, a plaintiff must also prove malice. *Banks v. Gallagher*, 686 F. Supp. 2d 499, 528 (M.D. Pa. 2009) (quoting *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979)). For the reasons already discussed, Plaintiff's allegations are insufficient to allow the Court to infer the existence of an agreement on the part of Defendants. Plaintiff also has failed to plead facts sufficient to establish malice. Accordingly, Dr. Geiser's motion to dismiss Count XII will be granted. Even though Dr. Geiser was the only Defendant to move to dismiss Count XII, the Court is nonetheless empowered to dismiss this Count in its entirety – i.e., against all other Defendants – inasmuch as it fails to state a claim. *See Penn. State Troopers Ass'n*, 2007 WL 853958, at *9 ("That a single defendant raised the issue does not alter plaintiffs' responsibility to marshal every fact and argument of law at its disposal to invalidate the defense presented.").

### G.    Counts VIII, IX, X, and XIII – Negligence, Respondeat Superior, Battery, and Negligent Supervision

Jameson and Fee argue that the negligence, respondeat superior, and negligent supervision claims should be dismissed because Plaintiff did not file a certificate of merit ("C.O.M."). Dr. Geiser joins Jameson and Fee in moving to dismiss the negligence claim, and he also contends that the battery claim should be dismissed for the same reason.

Under Pennsylvania law, a C.O.M. is required "[i]n any action based upon an allegation that a licensed professional deviated from an acceptable professional standard[.]" Pa. R.C.P. 1042.3. The certificate must be filed "within 60 days after the filing of the complaint" and certify

that a "licensed professional" has said, in writing, that there is a "reasonable probability" that the alleged conduct fell below "acceptable professional standards" and caused the alleged harm, or that expert testimony will not be necessary. Pa. R. Civ. P. 1042.3(a)(1)-(3).

If a plaintiff fails to comply with the C.O.M. requirement in state court, the defendant can file a praecipe for a judgment of non pros, which, once entered, "'effectively constitutes a dismissal of the cause without prejudice,' so long as the statute of limitations has not expired." *Schmigel v. Uchal*, 800 F.3d 113, 117 n.5 (3d Cir. 2015) (quoting *Stroud v. Abington Mem'l Hosp.*, 546 F. Supp. 2d 238, 249 (E.D. Pa. 2008)). Before doing so, however, the defendant has to give the plaintiff 30 days' notice. Pa. R. Civ. P. 1042.6. The Third Circuit Court of Appeals has held that both the C.O.M. requirement and the 30-day notice requirement are substantive rules under the *Erie* doctrine that must be applied by a federal court sitting in diversity. *Schmigel*, 800 F.3d at 120; *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 264-65 (3d Cir. 2011).

Plaintiff does not dispute that she did not file a C.O.M. or that Defendants gave her the requisite 30 days' notice. In her view, though, she was not required to do so. As she puts it, "[t]he Amended Complaint alleged that Jameson did not properly train or supervise its employees as it relates to performing unnecessary treatment at the behest of law enforcement and/or the circumstances that would require authorization via a search warrant or supervisor approval." Pl.'s Br. in Opp. to Jameson Defs.' Mot. 9. "In fact," she says, "it is not alleged that the medical treatment provided by Kim Fee or Dr. Geiser fell below that of professional standards. To the contrary, it is alleged that the complete *failure to obtain consent* involves ordinary negligence well within the realm of common sense and every day experiences of a lay person." *Id.* at 10 (emphasis added).

The Court agrees that Plaintiff was not required to file a C.O.M., although not necessarily

for the reasons she has offered. At bottom, Plaintiff is claiming that Geiser and Fee failed to obtain her consent to perform the allegedly unlawful cavity searches. *See, e.g.*, *id.*; Am. Compl. ¶ 162 (alleging that "Defendants breached [their duty of care] by performing unconsented and unnecessary medical treatments . . ."). While she characterizes this as an ordinary negligence claim, the Court finds that it is more properly considered a claim for medical battery. *See Cooper ex rel. Cooper v. Lankenau Hosp.*, 51 A.3d 183, 191 (Pa. 2012) (citing *Montgomery v. Bazaz-Seghal*, 798 A.2d 742, 749 (Pa. 2002); *Morgan v. MacPhail*, 704 A.2d 617, 620 (Pa. 1997); *Gray v. Grunnagle*, 223 A.2d 663, 669 (Pa. 1966)) (explaining "that claims alleging a lack of consent for surgery constitute a battery committed upon a patient by a physician.").[5] "Unlike a claim for medical negligence, there is no requirement that a Certificate of Merit be obtained for a medical battery claim." *Hanson v. Thakur*, No. CIV.A. 07-4992, 2008 WL 465810, at *2 (E.D. Pa. Feb. 20, 2008) (citing *Montgomery*, 742 A.2d 1125, 1130-31 (Pa. Super. Ct. 1999)) (construing claim that defendant-doctor failed to obtain plaintiff's consent to "appl[y] a blood pressure monitor . . . during surgery" as a medical battery claim"). The same is true with respect to Plaintiff's negligent supervision claim against Jameson, insofar as it is premised on the claim that Defendant Jameson did not adequately supervise Dr. Geiser and Fee with respect to the performance of unconsented medical treatments. *See Brownstein v. Gieda*, No. 3:08CV1634, 2009 WL 2513778, at *5 (M.D. Pa. Aug. 13, 2009) (citing *Smith v. Friends Hosp.*, 928 A.2d 1072, 1075 (Pa. Super. Ct. 2007) (finding that a C.O.M. was not required in action against

---

5.        The Pennsylvania Supreme Court has made clear "that claims alleging no consent for surgery, as well as claims alleging a lack of informed consent for surgery, both sound in the theory of tortious battery." *Cooper ex rel. Cooper*, 51 A.3d 183, 191 n.8 (Pa. 2012) (citing *Montgomery*, 798 A.2d at 748-49). "Both types of claims require a harmful or offensive touching." *Id.* The difference between the two claims is that "a lack of consent claim is proven by establishing that no consent was given for the surgical procedure performed; a lack of informed consent claim is proven by demonstrating that the physician failed to advise the patient of the material risks, complications and alternatives to surgery to permit the patient to make an informed decision regarding whether to undergo surgery." *Id.* Plaintiff's claim appears to fall in the former category – i.e., she is alleging a total lack of consent, not lack of informed consent.

hospital since claims did "not involve the provision of professional services in the form of diagnosis, treatment and care, but instead [involved] the failure to prevent assaults and batteries against the plaintiff").

Thus, these two claims will not be dismissed for failure to file a C.O.M. However, because Plaintiff's allegations sound in battery not negligence, Count VIII of the Amended Complaint must be nonetheless dismissed.

The respondeat superior claim fails for a separate reason. "In Pennsylvania, there is no separate cause of action for respondeat superior liability." *Olschefski v. Red Lion Area Sch. Dist.*, No. 1:12-CV-871, 2012 WL 6003620, at *6 (M.D. Pa. Nov. 30, 2012) (citations omitted). Respondeat superior is simply a way to impute liability to an employer for the actions of its agents and employees. *Id.* (citations omitted). Accordingly, Plaintiff's independent claim for respondeat superior will be dismissed. Plaintiff may, however, still rely upon the doctrine to attempt to impose liability on Jameson Health System for the actions of Dr. Geiser and Fee.

### H.    Count XIV – IIED

Jameson and Fee contend that Plaintiff has failed to state a claim for IIED. As the Third Circuit Court of Appeals has recognized, "Pennsylvania courts have been cautious in permitting recovery for [IIED]." *Williams v. Guzzardi*, 875 F.2d 46, 52 (3d Cir. 1989) (citing *Bradshaw v. Gen. Motors*, 805 F.2d 110, 114 (3d Cir. 1986)). In fact, the Pennsylvania Supreme Court has never actually recognized IIED as a tort. *See Hoy v. Angelone*, 720 A.2d 745, 754 n.10 (Pa. 1998). It has, however, explained that if it were to allow recovery for IIED, a plaintiff would have to establish that the defendant(s) engaged in "extreme and outrageous conduct," which "intentionally or recklessly causes severe emotional distress to another . . . ." *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 991 (Pa. 1987) (citing *Restatement (Second) of Torts* §

46). The Pennsylvania Supreme Court has also opined that if IIED was ever to be recognized, "at the very least, competent medical evidence [is] required to support a claim[.]" *Hoy*, 720 A.2d at 754 (citing *Kazatsky*, 527 A.2d at 995).

As to the first element, conduct is considered "extreme and outrageous" only if it is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Restatement (Second) of Torts* § 46 cmt. d). The alleged course of conduct in this case – e.g., taking Plaintiff into custody allegedly without a sufficient justification, repeatedly subjecting her to visual inspections and cavity searches in the face of mounting evidence that she was not actually hiding any drugs inside her body, making inappropriate remarks about her compromised position[6] – could, taken together, be found outrageous enough to allow for recovery. *See, e.g.*, *Dzwonczyk v. Syracuse City Police Dep't*, 710 F. Supp. 2d 248, 273-74 (N.D.N.Y. 2008) (explaining, albeit under New York law, "that an unlawful strip search, without more, may be considered extreme and outrageous conduct"); *Brownstein*, 649 F. Supp. 2d at 374 (concluding that the plaintiff adequately pled IIED claim where, "despite [the plaintiff's] vociferous protests, a team of medical and police staff violently forced him to submit to medical treatment for no good reason").

Jameson and Fee argue, however, that Plaintiff's IIED claim should still be dismissed because she "failed to allege that she has any medically-documented physical symptoms as a

---

6.    Generally, liability for IIED "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Restatement (Second) of Torts* § 46 cmt. d. However, "[t]he extreme and outrageous character of the conduct may arise from an abuse by the actor of a position . . . which gives him actual or apparent authority over the other, or power to affect his interests." *Id.* § 46 cmt. e. Police officers fall into that category. *Id.* Thus, the allegedly inappropriate comments made to Plaintiff at Jameson Hospital by those in a position of authority over her, when considered alongside the other alleged conduct, may be enough to satisfy the definition of "extreme and outrageous." *See, e.g.*, *Mejia v. City of N.Y.*, 119 F. Supp. 2d 232, 286 (E.D.N.Y. 2000) (concluding that ethnic slurs made to plaintiff during arrest may satisfy qualify as "extreme and outrageous" because they were made by arresting officer).

result of Kim Fee's conduct – which she is required to do." Jameson Defs.' Br. 7. The Court cannot agree. Contrary to Defendants' argument, Plaintiff claims that she underwent psychological treatment for "nightmares, mood disorder, inability to sleep, decreased intimacy and anxiety" as a result of the alleged conduct. Am. Compl. ¶ 80. Allegations of this sort are sufficient to survive a motion to dismiss. *See, e.g.*, *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 646 (E.D. Pa. 2014) (holding that plaintiff stated a claim for IIED where "his psychological injuries as a result of this incident have 'manifested themselves physically in the form of financial loss, sleep deprivation, reoccurring nightmares and other physically disabling manifestations'"); *Love v. Cramer*, 606 A.2d 1175, 1179 (Pa. Super. Ct. 1992) (holding that "alleged physical manifestations of emotional suffering, i.e. depression, nightmares, stress, and anxiety" were sufficient).

Of course, Plaintiff will eventually "need to substantiate these allegations with competent medical evidence, either at trial or at summary judgment if Defendants so move."[7] *Sullivan v. Warminster Twp.*, No. CIV.A.07-4447, 2010 WL 2164520, at *10 (E.D. Pa. May 27, 2010) (citing *Kazatsky*, 527 A.2d at 995; *Silver v. Mendel*, 894 F.2d 598, 607 n.19 (3d Cir. 1990)). At this stage, however, Plaintiff has pled enough to allow her IIED claim to proceed to discovery. *See Silver*, 894 F.2d at 607 n.19 (3d Cir. 1990) (concluding that plaintiff's allegations of emotional distress were "sufficient . . . to withstand a motion to dismiss," though objective proof of emotional distress would be required "to survive a motion for summary judgment").

---

7.      To survive summary disposition, Plaintiff will also have to establish the precise role of each Defendant named in this Count, as their level of involvement is not clear form the Amended Complaint. For example, Officer Panella's involvement appears to be far less extensive than that of the other Defendants. *See, e.g.*, Am. Compl. ¶ 70 ("Defendant Panella provided security, requested and retrieved samples, and otherwise assisted the medical staff when they performed a second internal examination of Plaintiff's vagina and rectum."). Her apparently minimal involvement causes the Court to question whether she could be held liable for IIED (or the other claims, for that matter).

**IV.**    **Conclusion**

For the reasons hereinabove stated, the Lawrence County Defendants' Motion to Dismiss (ECF No. 31) will be **GRANTED**; the City of New Castle's and Police Defendant's Motion to Dismiss (ECF No. 34) will be **GRANTED**; the Jameson Defendants' Motion to Dismiss (ECF No. 38) will be **GRANTED** as to Counts IV, VIII, and IX and **DENIED** in all other respects; and Dr. Geiser's Motion to Dismiss (ECF No. 49) will be **GRANTED** as to Counts IV, VIII, and XII, and **DENIED** in all other respects.

To summarize, then, Counts IV, VI, VII, VIII, IX, and XII will be **DISMISSED WITH PREJUDICE**. Plaintiff will, however, be permitted to proceed on the following claims: Counts I, II, III, V, X, XI, XIII, and XIV. An appropriate order follows.

McVerry, S.J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KIMBERLEE RAE CARBONE,  )
          **Plaintiff,**  )
            )
          **v.**  )  **2:15-cv-1175**
            )
THE NEW CASTLE POLICE DEPARTMENT,  )
CHIEF ROBERT SALEM, OFFICER DAVID  )
MAIELLA, OFFICER TERRY DOLQUIST,  )
OFFICER SHEILA PANELLA, LAWRENCE  )
COUNTY JAIL, CORRECTION OFFICER  )
APRIL BRIGHTSHUE, CORRECTION  )
OFFICER NIESHA SAVAGE, COMMANDER  )
MARK KEYSER, LAWRENCE COUNTY  )
DISTRICT ATTORNEY'S OFFICE,  )
ATTORNEY JOSHUA LAMANCUSA,  )
JAMESON HEALTH SYSTEMS, BERNARD  )
GEISER *M.D* and KIM FEE  )
          **Defendants.**  )

## ORDER

**AND NOW**, this 3rd day of February, 2016, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** as follows:

(1) the LAWRENCE COUNTY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM (ECF No. 31) is **GRANTED**;

(2) DEFENDANTS THE CITY OF NEW CASTLE, CHIEF ROBERT SALEM, OFFICER DAVID MAIELLA, OFFICER TERRY DOLQUIST, AND OFICER SHEILA PANELLA'S PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) (ECF No. 34) is **GRANTED**;

(3) JAMESON HEALTH SYSTEM'S AND KIM FEE'S MOTION TO DISMISS

PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) (ECF No. 38) is **GRANTED** as to Counts IV, VIII, and IX and **DENIED** in all other respects; and

(4) the RULE 12(b)(6) MOTION TO DISMISS filed by Defendant, Bernard Geiser, M.D. (ECF No. 49) is **GRANTED** as to Counts IV, VIII, and XII, and **DENIED** in all other respects.

Consistent therewith, Counts IV, VI, VII, VIII, IX, and XII are hereby **DISMISSED WITH PREJUDICE**.

The Defendants shall file Answers to Counts IV, VI, VII, VIII, IX, and XII in the Amended Complaint on or before **February 22, 2016**. The parties shall confer as necessary and file their Stipulation Selecting ADR Process and their Rule 26(f) Report on or before **February 29, 2016**. The Initial Case Management Conference is hereby **SCHEDULED** on **March 11, 2016, at 1:00 p.m.** in Courtroom 6C.

BY THE COURT:

s/Terrence F. McVerry
Senior United States District Judge

cc:     all counsel of record
        (via CM/ECF)